IN THE MATTER OF: D.S.A.
No. COA09-349
Court of Appeals of North Carolina
Filed: August 4, 2009
This case not for publication
James N. Freeman, Jr., for petitioner-appellee, Yadkin County Department of Social Services.
Pamela Newell Williams, for Guardian Ad Litem.
Richard Croutharmel, for respondent-appellant.
WYNN, Judge.
Under North Carolina General Statutes section 7B-1003(b), the trial court retains jurisdiction during the pendency of an appeal and shall "[e]nter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile."[1] In this appeal, Respondent-Mother argues the trial court lacked subject-matter jurisdiction to place D.S.A. into the guardianship of his maternal great-aunt and uncle while D.S.A.'s father's appeal of an order terminating his parental rights was pending. Because section 7B-1003 expressly authorizes the trial court to enter orders affecting the custody of the juvenile, we affirm in part. However, we must also remand because the trial court's findings of fact do not support its decision to waive further review hearings.
On 9 June 2006, Yadkin County Department of Social Services (DSS) filed a juvenile petition alleging that infant D.S.A. had been born into an injurious environment due to unstable housing and pending child abuse charges against Respondent-Mother regarding another son. DSS took nonsecure custody of D.S.A., who was placed with D.S.A.'s maternal great aunt and uncle ("maternal relatives").
On 6 July 2006, the trial court adjudicated D.S.A. a neglected juvenile. The trial court continued custody of D.S.A. with DSS and placement with the maternal relatives. Respondent-mother and D.S.A.'s father appealed the adjudication and disposition orders. This Court affirmed the adjudication, but remanded the matter to the trial court for submission of a visitation plan. In re D.S.A., 181 N.C. App. 715, 641 S.E.2d 18 (2007). By review order entered 1 May 2007, the trial court found that the parents resided in a home unsuitable for the juvenile; that the parents failed to comply with the out-of-home service agreement; and that D.S.A. was doing well in his placement with the maternal relatives. On 6 August 2007, the trial court conducted a permanency planning hearing. The trial court ceased reunification efforts with Respondent-Mother and D.S.A.'s father, and ordered a permanent plan of adoption.
On 5 December 2007, DSS filed a motion to terminate the parental rights of Respondent-Mother and D.S.A.'s father. After conducting a termination hearing over several months, the trial court terminated the parental rights of D.S.A.'s father and dismissed the motion to terminate the parental rights of Respondent-Mother. D.S.A.'s father gave notice of appeal from the termination order.
On 15 January 2009, the trial court conducted another permanency planning hearing. The Guardian ad Litem submitted a report, which recommended that D.S.A. be left in the care of the maternal relatives. DSS social worker Ginger Souther testified at the hearing that DSS recommended placing D.S.A. in the guardianship of the maternal relatives. DSS submitted a court report in support of its recommendation. At the end of the hearing, the trial court concluded that "legal guardianship should be established with the [maternal relatives]." The trial court further stated that it would not order any further reviews; however, "[s]uch reviews as are allowed to be initiated by law will obviously still be available, but there will be no regularly scheduled review, the requirements of 7B-906 having been met[.]" By permanency planning order filed 22 January 2009, the trial court awarded guardianship of D.S.A. to the maternal relatives, waived further review hearings, and ordered Respondent-Mother to have visitation with D.S.A.
Respondent-Mother appeals from the permanency planning order arguing the trial court: (I) lacked subject-matter jurisdiction and erred by entering a guardianship order while D.S.A.'s father's appeal from the order terminating his parental rights was pending in this Court; and (II) made insufficient findings of fact to support waiver of future review hearings.

I.
Respondent-Mother first contends the trial court erred in entering the permanency planning order when the D.S.A.'s father's appeal from the order terminating his parental rights was pending in this Court.
Respondent-Mother concedes that the trial court had subject matter jurisdiction to enter the order under N.C. Gen. Stat. § 7B1-003(b) since the order terminating the father's parental rights arose out of a motion to terminate and not a petition to terminate. See In re K.L., ___ N.C. App. ___, 674 S.E.2d 789 (2009) (under N.C. Gen. Stat. § 7B-1003(c), the trial court has no authority to enter any orders other than temporary ones affecting the custody and/or placement of the juvenile when a party has appealed an order terminating parental rights that arose out of a petition to terminate parental rights). Nonetheless, Respondent-Mother argues that the cumulative effect of the trial court awarding guardianship and waiving future hearings was to enter a permanent custody order in violation of section 7B-1003(b). We disagree.
N.C. Gen. Stat. § 7B-1003 provides:
(b) Pending disposition of an appeal, unless directed otherwise by an appellate court or subsection (c) of this section applies, the trial court shall:
(1) Continue to exercise jurisdiction and conduct hearings under this Subchapter with the exception of Article 11 of the General Statutes; and
(2) Enter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-1003(b) (2007).
Here, under its continuing jurisdiction, the trial court entered an order affecting the custody and placement of D.S.A. The guardianship order did not concern Respondent-Mother's or D.S.A.'s father's parental rights under Article 11 of Chapter 7B. Moreover, the trial court determined it was in the best interests of D.S.A. to award guardianship to the maternal relatives. The trial court's permanency planning order was expressly authorized and properly entered pursuant to N.C. Gen. Stat. § 7B-1003(b). This argument is without merit.

II.
Respondent-Mother also contends the trial court erred by failing to make sufficient findings of fact to support its determination to waive future review hearings.
First, Respondent-Mother argues the trial court failed to make sufficient findings of fact pursuant to section 7B-907. Specifically, she argues the trial court erred because: (1) the court failed to address Respondent-Mother's rights and responsibilities; and (2) the court failed to consider adoption.
Permanency planning hearings are held for the purpose of "develop[ing] a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2007). A court may designate guardianship as the permanent plan for a juvenile, but the court must comply with N.C. Gen. Stat. § 7B-907(b) by considering the following criteria and making written findings regarding these relevant factors:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile.
(6) Any other criteria the court deems necessary.
N.C. Gen. Stat. § 7B-907(b) (2007). As this Court has held, N.C. Gen. Stat. § 7B-907(b) "does not require a permanency planning order to contain a formal listing of the § 7B-907(b)(1)-(6) factors, `as long as the trial court makes findings of fact on the relevant § 7B-907(b) factors . . . .'" In re L.B., 181 N.C. App. 174, 190, 639 S.E.2d 23, 31 (2007) (quoting In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004), overruled on other grounds by In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005), superceded by statute as stated in In re T.R.P., 360 N.C. 588, 636 S.E.2d 787 (2006)).
In the present case, the trial court found:
2. DSA born [in] 2006, came into the custody of the Yadkin County DSS on June 9, 2006 and was adjudicated a neglected child on June 26, 2006. He has been placed with . . ., his maternal great uncle and aunt, since coming into custody of the Yadkin Citations omitted. DSS. He is happy in this placement and is very attached to his foster parents. He gets to visit with his brother, L (also in the custody of the Yadkin Co. DSS), every other week and also visits with his half brother D (in the custody of his biological father), on a regular basis.
3. The termination of parental rights motion hearing in this matter was completed on November 12, 2008. The Order On Motion To Terminate Parental Rights provided that the father's parental rights were terminated and that the motion was dismissed as to the mother. Thus, this hearing, regarding the father is a post-termination of parental rights hearing and, regarding the mother, is a permanency planning hearing.
6. The Guardian ad Litem agreed with the Yadkin County DSS that the current placement of the minor child is in the best interest of the minor child, should be continued and that the permanent plan should be guardianship to the [maternal relatives].
7. The mother, . . ., was present with her attorney and had the opportunity to cross examine witnesses and present evidence. She is working at Subway approximately 24 hours per week making $6.55 per hour. She is paying child support for the minor child. She has not had a counseling session since March of 2008. Her living situation has not appreciably improved. She is living with the father at the same residence on Patsy Lane in which they were living when the minor child was removed from them. The home has no running water or electrical service. The broken/missing windows have not been repaired/replaced. Despite the fact that some minor repairs have been made, there have been no significant improvements made to the home. She has failed to complete her Out-of-home Family Services Agreement.
8. The [maternal relatives] have suitable and ample home for the minor child. They live in a 4-bedroom home on an acre and a half lot with central air and heat in a rural community. [One of the maternal relatives] is healthy and works full-time. [The other maternal relative] receives disability benefits and stays at home. He takes prescription medications for high blood pressure, diabetes and high cholesterol. None of his medical conditions prevent him from caring for the minor child or the other three children living in the home. The [maternal relatives] understand the legal responsibility of guardianship and are financially able to care adequately for the minor child.
9. The mother has been visiting with the minor child at the Yadkin Co. DSS. Those visits have gone well and she has become more consistent and prompt in her visits. She has never had an unsupervised visit with the minor child. The [maternal relatives] are willing to facilitate visits between the mother and the minor child at their home.
Here, the trial court considered Respondent-Mother's rights and responsibilities under the plan, as required by N.C. Gen. Stat. § 7B-907(b)(2), when it found that Respondent-Mother shall have visitation with D.S.A. As a barrier to adoption, the factor set out in N.C. Gen. Stat. § 7B-907(b)(3), the trial court found that the termination of parental rights motion as to Respondent-Mother was dismissed and the goal for D.S.A. was guardianship with the maternal relatives. Accordingly, these contentions are without merit.
Respondent-Mother also asserts that the trial court failed to properly waive future hearings when it did not make written findings under N.C. Gen. Stat. § 7B-906(b).
The general rule is that following a permanency planning hearing, "[s]ubsequent permanency planning hearings shall be held at least every six months thereafter . . . to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile." N.C. Gen. Stat. § 7B-907(a) (2007). These hearings may be combined with review hearings under N.C. Gen. Stat. § 7B-906. N.C. Gen. Stat. § 7B-907(a). The trial court may dispense with these hearings under certain circumstances. Section 7B-906 provides:
[T]he court may waive the holding of review hearings required by subsection (a) of this section, may require written reports to the court by the agency or person holding custody in lieu of review hearings, or order that review hearings be held less often than every six months, if the court finds by clear, cogent, and convincing evidence that:
(1) The juvenile has resided with a relative or has been in the custody of another suitable person for a period of at least one year;
(2) The placement is stable and continuation of the placement is in the juvenile's best interests;
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months;
(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and
(5) The court order has designated the relative or other suitable person as the juvenile's permanent caretaker or guardian of the person.
The court may not waive or refuse to conduct a review hearing if a party files a motion seeking the review. However, if a guardian of the person has been appointed for the juvenile and the court has also made findings in accordance with G.S. 7B-907 that guardianship is the permanent plan for the juvenile, the court shall proceed in accordance with G.S. 7B-600(b).
N.C. Gen. Stat. § 7B-906(b) (2007). Failure to find all of these criteria constitutes reversible error. See In re R.A.H., 182 N.C. App. 52, 62, 641 S.E.2d 404, 410 (2007). Additionally, findings pursuant to section 7B-906 must be written. See In re L.B., 184 N.C. App. 442, 447, 646 S.E.2d 411, 414 (2007).
Respondent-Mother specifically argues that the trial court's order failed to make written findings regarding subsections (3) and (4). We agree.
Here, the trial court did not make a written finding that neither the juvenile's best interests nor the rights of any other party, including Respondent-Mother, require the continued holding of review hearings every six months under section 7B-906(b)(3). In addition, although the trial court noted at the conclusion of the hearing that "[s]uch reviews as are allowed to be initiated by law will obviously still be available[,]" the trial court's order is devoid of any finding that Respondent-Mother was entitled to another review hearing by filing a motion for review under section 7B-906(b)(4). Because the trial court's order fails to satisfy the requirements of sections 7B-906(b)(3) and (4), we must reverse on this issue and remand the case to the trial court for written findings of fact on each of the factors under section 7B-906(b).
Affirmed in part, reversed and remanded in part.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] N.C. Gen. Stat. § 7B-1003(b)(2) (2007); see also In re K.L., __ N.C. App. __, __, 674 S.E.2d 789, 794 (2009).